## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:18-cv-20839-UU

PATRICIA KENNEDY,

      Plaintiff,

v.

FLORIDIAN HOTEL, INC.,

      Defendant.

_____/

## ORDER

THIS CAUSE is before the Court upon Plaintiff's Second Motion for Summary Judgment (the "Motion"). D.E. 39. The Court has reviewed the Motion, the pertinent portions of the record and is otherwise fully advised of the premises. For the reasons set forth below, the Motion is DENIED.

### I.    Factual Background

Except as otherwise noted, the following facts are undisputed. Plaintiff, Patricia Kennedy is a resident of Florida and by virtue of a spinal injury that limits her mobility, is a person with a disability under the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, ("ADA"). D.E. 40 ¶ 1; D.E. 45 ¶ 1. Plaintiff is an "ADA tester," who visits various places of public accommodation and their associated websites to ascertain whether they are in compliance with the ADA. D.E. 40 ¶ 3. Defendant, Floridian Hotel, Inc., owns and operates the Floridian Hotel (the "Hotel") located in Homestead, Florida. D.E. 47 ¶ 2. The Hotel is a place of "public accommodation" under the ADA. D.E. 40 ¶ 4; D.E. 50 ¶ 4. Defendant also owns and operates the Hotel's website: www.floridianhotel.com (the "Website"). Sometime[1] prior to the commencement of this lawsuit, Plaintiff visited the Website. D.E. 40 ¶ 6

_____

[1] Defendant testified that she first visited the website On or about January 9, 2017. D.E. 45-1 at 12.

As of March, 5, 2018, the Website was not in compliance with the ADA's requirements and guidelines prohibiting discrimination in public accommodations promulgated by the United States Department of Justice and codified at 28 C.F.R. § 36.302(e). D.E. 47 ¶ 5. As of June 11, 2018, the Website was still not in compliance with 28 C.F.R. § 36.302(e), and Defendant had not made any efforts to ensure compliance with § 36.302(e). *Id.* ¶¶ 6-7.

## II.    Procedural Background

On March 5, 2018, Plaintiff filed her complaint. D.E. 1. On April 17, 2018, Defendant filed a motion to dismiss Plaintiff's complaint for lack of jurisdiction and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(1), and 12(b)(6), respectively. D.E. 10. On May 15, 2018, the Court granted the motion to dismiss, noting that Plaintiff had neither adequately identified her injury-in-fact nor a real and immediate threat of future injury, but permitted Plaintiff to amend her complaint to cure these deficiencies. D.E. 20.On May 17, 2018, Plaintiff filed her one-count amended complaint against Defendant, seeking injunctive relief and a declaratory judgment that Defendant violated Title III of the ADA because the Website did not provide certain accessibility features as required by 28 C.F.R. § 36.302(e). D.E. 21. On May 31, 2018, Defendant filed its answer to Plaintiff's amended complaint. D.E. 24. On June 12, 2018, the Court entered its Scheduling Order for Pretrial Conference and Trial, D.E. 27, setting a dispositive motion deadline of October 26, 2018. On August 7, 2018, Plaintiff filed her first motion for summary judgment, D.E. 32, which the Court denied as premature. D.E. 37. On October 23, 2018, Plaintiff filed her second motion for summary judgment. D.E. 39. The Motion is fully briefed and ripe for disposition.

### III.   <u>Legal Standard</u>

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *Envntl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. *Impossible Elec. Techs., Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031

(5th Cir. 1982); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying the relevant legal questions raised by the pleadings or are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255.

**IV.**   **Discussion**

A. The Parties' Claims

Plaintiff argues that she is entitled to summary judgment on her claims for injunctive relief and declaratory judgment because there is no genuine dispute as to each of the elements of her ADA Title III claim: that she is disabled, that the Hotel is a place of public accommodation, and that that when she visited the Website it was not in compliance with 28 C.F.R. § 36.302(e)(1) D.E. 39.

Defendant responds that that Plaintiff lacks standing to bring her complaint because Plaintiff has not produced evidence demonstrating that she will be subject to a real and immediate threat of future injury.[2] D.E. 44.

---

[2] Defendant also argues that while Plaintiff may have suffered an injury in fact, the injury in fact is not fairly traceable to Defendant's conduct because she visited the website "in order to aid in her trip to Miami-Dade County, not to ascertain whether the Website was in Compliance with the ADA, and she ultimately cancelled her trip for reasons unrelated to Defendant or its Website." D.E. 44 at 7-8. In support, Defendant points to Plaintiff's deposition

Because standing is jurisdictional, the Court will first evaluate whether Plaintiff has standing to bring her claims before turning to the merits of her claim[3]. *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n. 42 (11th Cir.1991) ("Because standing is jurisdictional, a

---

testimony in which she testified that she visited the Website as part of an eventually cancelled visit to the Florida Keys to visit a friend whose name and address she could not recall. D.E. 45-1 at 15:12-19, 16:1-11, 17:24-25, 18:1-6. Thus, Defendant concludes that Plaintiff's failure to enjoy equal access to the goods and services was not fairly traceable to Defendant's actions, but to Plaintiff's decision to cancel her trip. Plaintiff responds that her motive in visiting the website is irrelevant; the injury in fact occurred when Plaintiff visited the Website and discovered that it was not ADA-compliant, and Defendant owns and operates the website. D.E. 49 at 9. The Court agrees with Plaintiff that the law in this Circuit and others does not focus on a plaintiff's motive in establishing traceability between noncompliance with the ADA and Defendant. *See Houston*, 733 F.3d at 1332 ("The substantive right conferred by the statute is to be free from disability discrimination in the enjoyment of the facility, regardless of Houston's motive for visiting the facility. Houston suffered an injury when he allegedly encountered architectural barriers at the Presidente Supermarket—notwithstanding that he did so while testing for ADA compliance . . . .") (emphasis added); *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) ("[A]nyone who has suffered an invasion of the legal interest protected by Title III may have standing, regardless of his or her motivation in encountering that invasion.") (emphasis added). Moreover, "[a] showing that an injury is 'fairly traceable' requires less than a showing of 'proximate cause…' Even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (citation omitted). As discussed *infra*, Plaintiff suffered an injury in fact upon encountering the barriers to access on the non-compliant website. Since Defendant stipulated both that it owns and operates the Website and that the Website was not in compliance with the ADA at the time she brought suit, *see* D.E. 47 ¶¶4-6, the injury-in-fact is fairly traceable to Defendant, regardless of whether Plaintiff ended up using the Website's services.

[3] Defendant also argues Plaintiff's claims are moot because it has since brought the Website into compliance with § 36.302(e). D.E. 44. Although the Court dismisses Plaintiff's claim for lack of standing, it notes that Plaintiff's claim does not appear to be moot. Firstly, as Plaintiff rightly notes, the Eleventh Circuit recently held that where a party seeks injunctive relief to maintain a website in compliance with the ADA, amending the website to fix ADA violations does not moot the injunction to the extent it seeks to require a party to maintain its website in compliance with the ADA. *See Haynes v. Hooters of Am., LLC*, 893 F.3d 781, 784 (11th Cir. 2018) ("[E]ven if Hooters' website becomes ADA compliant, Haynes seeks injunctive relief requiring Hooters to maintain the website in a compliant condition. Thus, notwithstanding the fact . . . that Haynes [has obtained] much of the relief he requested, there is still a live controversy about whether Haynes can receive an injunction to force Hooters to make its website ADA compliant or to maintain it as such. Therefore, this case is not moot."). Plaintiff's amended complaint seeks an injunction not only requiring Defendant to bring the Website into ADA compliance, but also "to implement a policy to monitor and maintain the website to ensure that it remains in compliance with said requirement." D.E. 21 at 7. Thus, even if the Website were in full compliance, the case would not be moot. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (explaining that mootness occurs "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.") (citations and internal quotation marks omitted). Second, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation omitted). Although Defendant asserts that the Website is fully in compliance with the ADA, its sole explanation for why the wrongful behavior will not recur is "the subject Website is infrequently changed; it will accordingly not be changed back in order to remove the additional features that were added, regardless of whether an injunction is issued." D.E. 44 at 6. This is not sufficient to meet Defendant's formidable burden – there is nothing preventing Defendant from modifying the Website so that it is no longer in compliance with §36.302(e). Thus, the Court finds that the action is not moot.

dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)."); *Cuban American Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1422 (11th Cir.1995) ("[B]efore rendering a decision ... every federal court operates under an independent obligation to ensure it is presented with the kind of concrete controversy upon which its constitutional grant of authority is based. . . .") (quotation omitted).

    B.  <u>Standing</u>

        i.  <u>Standard</u>

As set forth by the Supreme Court in *Spokeo, Inc. v. Robins*, to establish Article III standing, a plaintiff must demonstrate that he or she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, (2016). In addition, when a party seeks injunctive relief, he or she must show "that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). "Each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (citation omitted). Accordingly, as the litigation is at the summary judgment stage, Plaintiff must show that she suffered an injury in fact using affidavits and other evidence.

        ii.  <u>Injury-in-Fact</u>

In order to demonstrate standing, Plaintiff must show that she has suffered an "injury in fact." *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1286 (11th Cir. 2010) (citation omitted). To establish an injury in fact, Plaintiff must show that she has suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not

conjectural or hypothetical." *Spokeo,* 136 S. Ct. at 1548 (citation omitted). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* (citation omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist. *Id.* (citation omitted). "In addition to past injury, a plaintiff seeking injunctive relief must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1328–29 (11th Cir. 2013) (citations omitted).

Plaintiff asserts that she visited the Website to ascertain whether the Hotel had the accessibility features she required, but that she was unable to ascertain whether the Hotel had those features because the Website was not in compliance with § 36.302(e)(1). D.E. 39 at 5; D.E. 40-1 ¶ 6. Although not entirely clear, Defendant does not appear to dispute that Plaintiff suffered an injury-in-fact by virtue of encountering the barriers on the admittedly non-compliant Website. *See* D.E. 44. Furthermore, Plaintiff's deposition testimony establishes that she visited the Website to determine the Hotel's accessibility features and encountered accessibility barriers:

> Q. So you come onto the Floridian Hotel site, and what did you search?
>
> A. I search for a room that I could use for a visit, stay to see if it would satisfy what I need.
>
> Q. What kind of room did you search for?
>
> A. Handicap room . . .
>
> Q. What information could you not find?
>
> A. I could not ascertain whether they had any accessible rooms at all.

D.E. 45-1 at 21:12-17, 23:14-16.

The law in this Circuit is clear that encountering a barrier to access generally is an injury-in-fact for standing purposes. *See Jones v. Piedmont Plus Fed. Credit Union*, No. 1:17-CV-5214-RWS, 2018 WL 4694362, at *1 (N.D. Ga. Sept. 26, 2018) ("Plaintiff suffered a concrete injury

when he attempted to access the website but was unable to fully and effectively utilize it.");
*Jones v. Family First Credit Union*, No. 1:17-CV-4592-SCJ, 2018 WL 5045231, at *4 (N.D. Ga. Aug. 6, 2018) (explaining that the inability to determine a public accommodation's accessibility information via its website constitutes an injury-in-fact because it is "direct exposure to differential treatment of a person with a disability."). Thus, the Court finds that Plaintiff has shown that she suffered an injury in fact when she encountered the ADA violations on the Website.

> iii.   Threat of Future Injury

>> a. Standard

However, because Plaintiff is seeking forward-looking injunctive and declaratory relief, a past injury in fact is insufficient to confer standing; she "must [also] show a sufficient likelihood that [s]he will be affected by the allegedly unlawful conduct in the future." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001). This requires that Plaintiff demonstrate "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Shotz v. Cates,* 256 F.3d 1077, 1082 (11th Cir.2001). In the context of the Title III of the ADA, the Eleventh Circuit has clarified that demonstrating a real and immediate threat of future injury requires that prior to bringing suit, a Plaintiff must, "have attempted to return to the non-compliant [facility] or at least intend to do so in the future." *Houston*, 733 F.3d at 1336 (quotation omitted).

Defendant correctly notes that Courts are generally guided by four factors in making this determination: (1) the definitiveness of plaintiff's plan to return; (2) plaintiff's past patronage of defendant's business; (3) the proximity of the place of public accommodation to plaintiff's residence; and (4) the plaintiff's frequency of travel near defendant. *See Houston*, 733 F.3d at

1327. However, as the court in *Kennedy v. Gold Sun Hospitality, LLC*, No. 8:18-cv-842-T-33CPT (M.D. Fla. June 18, 2018), D.E. 23[4], noted, the application of these factors when discussing a website, as opposed to physical property, is uncertain:

> The traditional four-factor test for future injury, which was designed for cases involving physical barriers, is simply very challenging to be applied here, which involves the violation of a regulation that regulates online reservation system.[5]

*Id.* at 31-32; *see infra* pp. 24-25; *see also Voyeur Dorm, L.C. v. City of Tampa*, 265 F.3d 1232, 1237 n. 3 (11th Cir.2001) (explaining that the Internet is "a unique medium . . . located in no particular geographical location but available to anyone, anywhere in the world, with access to the Internet.") (quotation omitted).

Nevertheless, this Court finds some of these factors, such as the definitiveness of Plaintiff's intent to return and Plaintiff's past patronage can be readily adapted to ascertain whether Plaintiff has shown a threat of future injury due to the non-compliant Website. Further, as these factors are merely guidelines, the Court is persuaded that it should consider the "totality of the circumstances" in determining if Plaintiff has adequately demonstrated a "real and immediate" threat of future injury. *Kennedy v. Schling LLC*, No. 6:17-CV-74-ORL-22TBS, 2017 WL 6597119, at *5 (M.D. Fla. Nov. 14, 2017) ("District courts must consider the totality of all relevant facts to determine whether a plaintiff faces a real and immediate threat of future injury.") (quotation omitted) (emphasis added); *see also Kennedy v. Beachside Commercial Properties, LLC*, 732 F. App'x 817, 821 (11th Cir. 2018) ("In taking all of the factual allegations and the totality of the circumstances into consideration, we conclude that Plaintiff has failed to

---

[4] The court issued its ruling from the bench and the citations in this order are to the transcript of the motion hearing.

[5] Indeed, Defendant attempts to apply the four-factor test to the Hotel, but because Plaintiff's claims are tied to the Website, and not the Hotel itself, the Court does not discuss these arguments. *See* D.E. 44 at 9.

demonstrate a 'real and immediate threat of future injury' and thus cannot meet the requirements for standing.") (quotation omitted) (emphasis added).

### b. Parties' Arguments

Defendant argues that Plaintiff has not demonstrated a real and immediate threat of future injury because she has not produced any evidence indicating anything beyond a vague and conclusory intent to return to the Website in the future because any plans she has to return to the Website are dependent on a variety of external factors. D.E. 44 at 9. In support, Defendant points to Plaintiff's deposition testimony, in which she testified that she first visited the Website as part of an eventually cancelled trip to the Florida Keys, to see a friend whose name she does not know, whose address she does not know, and who lives on a boat and moves around. D.E. 44 at 8-9. In addition Defendant points out that Plaintiff testified that she has no routine or system to ensure that she revisits the websites with ADA violations that she has sued; instead, she revisits websites on an *ad hoc* basis. D.E. 44 at 8-9.

Plaintiff does not directly respond to these assertions other than to state that "the fact that violations still exist means that, when Ms. Kennedy revisits the Defendant's website as she has now done twice, she will, again, be subject to discrimination." D.E. 49 at 9-10. Plaintiff also cites to the standing discussion in *Gold Sun Hospitality, LLC*, No. 8:18-cv-842-T-33CPT, D.E. 23, in which that court found that the plaintiff's ADA tester status and ability to easily access the non-compliant website increased the likelihood of future injury. In addition, in her affidavit Plaintiff affirms that she intends to revisit the Website to test it for compliance and to avail herself of the goods and services of the Hotel, D.E. 33 ¶ 11, and that she revisited the Website in October, 2018, but it was still not compliant with the ADA. D.E. 40-1 ¶ 8.

c. Totality of the Circumstances

1. Stage of Litigation

The Court agrees with Defendant that, taking all of the factual allegations and the totality of the circumstances into account, Plaintiff has failed to demonstrate a "real and immediate threat" of future injury. As an initial matter and as Defendant correctly notes, this case is no longer at the pleading stage and the Court is therefore not required to accept Plaintiff's factual allegations as true. *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . .  In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts.") (quotation omitted). The precedent Plaintiff relies upon for the proposition that mere professed intentions to return to a non-compliant facility are sufficient to demonstrate a threat of future injury can be distinguished on this basis.

For example, in its discussion of the threat of future injury in *Gold Sun Hospitality, LLC*, No. 8:18-cv-842-T-33CPT, D.E. 32, the court cited *Stevens v. Premier Cruises, Inc.,* 215 F.3d 1237, 1239 (11th Cir. 2000) for the proposition that a plaintiff's stated intention to revisit a website to test its compliance with the ADA in the near future was sufficient to find that she had alleged a real and immediate threat of future injury. D.E. 49-2 at 30-31. However, that court also noted:

> I'm finding that there is standing, at least at the pleading stage. It doesn't necessarily mean at summary judgment or further along in the proceedings, but at the pleading stage, there is standing . . . again, here the test -- we are at the pleading stage, and it's more lenient than at later stages of the proceedings . . . .

*Gold Sun Hospitality, LLC*, No. 8:18-cv-842-T-33CPT, D.E. 32 at 32:9-14 (emphasis added). In addition, the Eleventh Circuit in *Stevens* was ruling at the pleading stage – it did not hold that a conclusory allegation of intent to return was sufficient to demonstrate a real and immediate threat of future injury at the summary judgment stage. *See Houston,* 733 F.3d at 1334 (explaining that

*Stevens* "involved [a] motion[] to dismiss where we addressed standing based on facts alleged in the complaint taken as true for purposes of the motion[]."); *see also Bischoff v. Osceola Cty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000) ("[W]hen standing becomes an issue on a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may be sufficient to show standing. However, when standing is raised at the summary judgment stage, the plaintiff can no longer rest on mere allegations.") (quotation omitted). Moreover, *Stevens* is unusually brief in its analysis. As the court in *Schling LLC*, No. 6:17-CV-74-ORL-22TBS, 2017 WL 6597119, at *5 observed: "[w]ith the exception of *Stevens* . . . courts [do] not end their standing inquiry with the plaintiff's statement that he or she intended to return to the property in the near future." (quotation omitted).

Considering the totality of the circumstances and the record evidence, at the summary judgment stage, for the reasons set out *infra*, the Court does not find that Plaintiff has demonstrated a real and immediate threat of future injury.

### 2.  Boilerplate Language

First, Plaintiff's intention to return to the Website in her affidavit is overly vague and boilerplate:

> In the near future, I intend to revisit Defendant's website and/or online reservations system in order to test it for compliance with 28 C.F.R. Section 36.302(e) and/or to utilize the website to reserve a guest room and otherwise avail myself of the goods, services, features, facilities, benefits, advantages, and accommodations of the property.

D.E. 40-1 ¶ 10. Indeed, she simply parrots the language of § 36.302(a) ("A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or

accommodations to individuals with disabilities . . . .”). As the Supreme Court has made clear, such generic statements are insufficient to support a finding of an actual or imminent injury:

> ‘some day’ intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the ‘actual or imminent’ injury that our cases require.

*Lujan*, 504 U.S. at 564 (emphasis in original); *Kennedy v. Cape Siesta Motel, LLC*, No. 617CV537ORL40DCI, 2018 WL 4822479, at *4 (M.D. Fla. Oct. 4, 2018) (“Plaintiff’s boilerplate language, broad statements of intent, and contradictions undercut the argument that she will likely return.”) (emphasis added); *Kennedy v. Solano*, 735 F. App'x 653, 655 (11th Cir. 2018) (holding plaintiff had no standing because she “fails to allege a definitive time to return to the Sunset Café. She avers that she intends to return to the restaurant in the future when it is ADA compliant, but these conclusory allegations contain no concrete plan regarding her return.”) (emphasis added); *Beachside Commercial Properties, LLC*, 732 F. App'x at 821-22 (affirming dismissal for lack of standing because “[w]hile neither our court nor the Supreme Court require detailed or concrete travel plans to revisit a place to meet standing requirements, case law requires more immediacy than a “someday” plan,” and Plaintiff’s allegation that she “plan[s] to return to the property in the future” so that she can “shop, dine, and ... monitor its ADA conditions” was insufficient) (emphasis added); *Hilson v. D'More Help, Inc*., No. 15-CIV-60155, 2015 WL 1737688, at *6 (S.D. Fla. Apr. 16, 2015) (finding plaintiff failed to state a real and immediate threat of future injury because Plaintiff “only declare[d] that he “intend[ed] to avail [himself] of the services offered at the facility in the future” and “intend[ed] to visit the Facility and Property within six months, or sooner.”). Instead, a plaintiff must aver something akin to “a concrete and realistic plan of when [s]he [will] visit the [facility] again.” *Houston* 733

13

F.3d at 1340. As Defendant correctly notes, the remaining record evidence does not show that Plaintiff has such a plan to revisit the Website.

### 3. Past Patronage

Plaintiff only visited the website once before filing suit and cannot claim that this singular past visit is sufficient to indicate future injury. *Beachside Commercial Properties, LLC*, 732 F. App'x at 821 ("[P]laintiff only visited the allegedly non-complaint premises once before filing her complaint (and even her amended complaint) <u>and thus cannot claim that her singular past injury presents evidence suggesting future injury</u>.") (emphasis added); *Compare Shotz*, 256 F.3d 1082 (holding that one visit to a non-complaint facility without an expressed intent to return was "conjectural, hypothetical, or contingent"), *with Houston*, 733 F.3d at 1336 (holding that plaintiff's multiple visits to the non-compliant premises prior to filing suit demonstrated a "real and immediate" threat of future discrimination); *see also Bodley v. Plaza Mgmt. Corp.*, 550 F.Supp.2d 1085, 1088 (D.Ariz.2008) ("While a single visit does not preclude a finding of standing, the lack of a history of past patronage seems to negate the possibility of future injury at that particular location.") (internal citations and quotations omitted).

### 4. Reason for Visit

In addition, "[A] plaintiff's reason for returning to defendant's place of business is a factor to be considered in the standing analysis." *Schling LLC*, No. 6:17-CV-74-ORL-22TBS, 2017 WL 6597119, at * 6. Defendant points out that Plaintiff testified that the reason for her singular visit to the Website was to facilitate a trip to see a friend whose name she cannot remember, whose address she does not know, who lives on a boat somewhere in the Florida Keys, who "moves around a lot," who she has not seen since April of 2006, who she did not end up seeing, and who she has no firm plans to see again as of January 2017:

Q. How was it that you decide[d] to look at the Floridian Hotel's website?

A. I needed to go down to Miami, so I was searching places where I could stay.

Q. Where in Miami did you need to go down to?

A. Well, I have a friend of mine in the Keys.

Q. Where in the Keys?

A. I don't recall the town . . .

Q. What's his name?

A. I see him in my head. Let me think. Oh, God. That's awful. I can see his face. I can't think of his name . . .

Q. But you don't know where in the Keys he lives?

A. No.

Q. So if you don't know where in the Keys he lived, how did you know where to look for a hotel?

A. Because he's on a boat. He's not in the same place all the time . . .

Q. So let me just understand. So you went on the Floridian Hotel's website looking for a hotel for a place that you don't know where you were going?

A. I don't recall now, no.

Q. And you never ended up going down there?

A. Right. I did not . . .

Q. Since that time, January 2017, have you made any firm plans to go back and see this person?

A. No . . . .

D.E. 45-1 at 15:12-19, 16:1-11, 17:24-25, 18:1-6; 32:22-24. Furthermore, Plaintiff testified that at the time she brought suit, her future plans to revisit her friend and/or the Website depended on "her schedule open[ing] up," when "the weather seemed cool," D.E. 45-1 at 30:8-12, and her driver being available because she could not drive all the way to Homestead alone:

15

Q. So when you went to the website initially, I mean, what plans did you have to go back and revisit the website?

A. When my schedule opened up and the weather seemed cool, I was still going to resume that and try . . .

Q. Since that time, January 2017, have you made any firm plans to go back and see this person?

A. It's in my head, but you know, I have to work out his schedule, and my schedule, and Daniel's schedule and it ends up being hairy.

Q. Why do you need Daniel to go with you?

A. Because I can't drive that far.

D.E. 45-1 at 30:8-12, 32:22-25, 33:1-3. To be sure, Plaintiff also testified that she sometimes revisits non-compliant websites if she happens to be in the area. *Id.* at 39:5-7. But, Defendant's Hotel is in Homestead, D.E. 47 ¶ 2, and Plaintiff testified that she lives in Broward County, Florida, D.E. 45-1 at 5, that she was unsure if she had ever stayed in a hotel in Homestead, D.E. 45-1 at 18:7-8, that she has not stayed in a hotel in Homestead in the last year, *id.* at 18:9-10, that she was unsure if she had stayed in a hotel in Homestead in the last two or three years, *Id.* at 18:12-17, and that she requires a driver to drive that distance and reconciling their schedules can be "hairy." *Id.* at 33:1-3; *cf. Harris v. Del Taco, Inc.,* 396 F.Supp.2d 1107, 1115 (D.Cal.2005) ("The mere fact that Mr. Harris frequently drives from Cottonwood to San Diego does not give Mr. Harris standing to sue every public accommodation located anywhere on that 650–mile stretch of the 1–5.").

Therefore, the Court agrees with Defendant that Plaintiff's stated rationale is not a sufficient basis upon which a factfinder could conclude that Plaintiff will revisit the Website: Plaintiff has no firm plan to revisit her unnamed friend and any such plan is dependent on a number of "hairy" external contingencies. *See Emory v. Peeler*, 756 F.2d 1552 (11th Cir. 1985)

16

(explaining that the threat of future injury "may not be conjectural, hypothetical, <u>or contingent</u>; it must be real and immediate, and <u>create a definite, rather than speculative threat of future injury</u>."); (emphasis added); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) (holding that "a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (citations and internal quotation marks omitted)); *see also Steven Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1375 (M.D. Fla. 2004) (holding plaintiff had not shown a real and immediate threat of future injury because "[h]is explanation for his first visit . . . is incredulous, as is his desire to return to that facility."); *Access 4 All v. Oak Spring, Inc.*, No. 504CV75OCGRJ, 2005 WL 1212663, at *4 (M.D. Fla. May 20, 2005) (granting summary judgment because "[o]ther than Mr. Esposito's bald assertion that he plans to return to the Howard Johnson, Plaintiffs have presented no evidence of a threat of future injury, and, in fact, the record evidence establishes that the possibility of future injury is speculative at best.").

### 5. ADA Tester

Plaintiff's affidavit contains one final rationale for revisiting the Website: that as an ADA tester, she "intends to revisit Defendant's website and/or online reservations system in order to test it for compliance with 28 C.F.R. Section 36.302(e) . . . ." D.E. 33 ¶ 11. Indeed, Plaintiff asserts that she initially visited the Website to test it for ADA compliance. D.E. 40-1 ¶ 6. Certainly, the Court agrees with Plaintiff that her status as an ADA tester could militate toward finding that she has a definite intent to return to the website as part of her routine ADA testing. *See Houston*, 733 F.3d at 1336 (explaining that plaintiff's status as a tester indicated that he would revisit the property many times and therefore tended to show a real and immediate threat of future injury); *Gold Sun Hospitality, LLC*, No. 8:18-cv-842-T-33CPT, D.E. 23 at 31:6-8

("Kennedy's status as a tester plausibly increases the likelihood she will visit the website again to test its compliance."). However, Plaintiff's status as an ADA tester does not automatically imbue her with standing for her claims, as the Eleventh Circuit noted: "Each plaintiff must establish standing on the facts of the case before the court. <u>That is equally as true about a regular customer of a public accommodation as it is for a tester</u>." *Houston*, 733 F.3d at 1340 (emphasis added).

Here, even if the Court were to take as true Plaintiff's assertion in her affidavit that she initially visited the Website to test it for ADA compliance, Plaintiff's status as a serial litigant and her haphazard approach to ADA testing indicate that a factfinder would not be able to find that she is likely to revisit the website. Firstly, the Court takes judicial notice of the fact that in the past six months in this district alone, Plaintiff has brought a horde of suits against properties' websites for failure to comply with § 36.302(e) (in many cases, including this one, the same property multiple times), asserting nearly identical boilerplate intentions to return to the subject website in each case. *Compare,* D.E. 21 ("In the near future, and within the next eight months[6], Plaintiff intends to revisit Defendant's website and/or online reservations system in order to test it for compliance with 28 C.F.R. Section 36.302(e) and/or to utilize the website to reserve a guest room and otherwise avail herself of the goods, services, features, facilities, benefits, advantages, and accommodations of the Property."), *with Kennedy v. Floridian Hotel, Inc.,* No. 0:18-cv-62486-UU (S.D. Fla. November 28, 2018) D.E. 1 ("In the near future, Plaintiff intends to revisit Defendant's website and/or online reservations system in order to test it for compliance with 28 C.F.R. Section 36.302(e) and/or to utilize the website to reserve a guest room and otherwise avail

---

[6] Plaintiff's addition of "in the next eight months" to her amended complaint is not repeated in her affidavit, and Plaintiff "can no longer rest on mere allegations." *Bischoff*, 222 F.3d at 878. Moreover, sometime in the "next eight months" is still insufficiently vague to confer standing. *See, e.g., Hilson,* No. 15-CIV-60155, 2015 WL 1737688, at (finding plaintiff lacked standing despite alleging an intent to return in the next six months); *see also, e.g., Tampa Bay Americans with Disabilities v. Nancy Markoe Gallery, Inc*., 2007 WL 2066379, *2 (M.D.Fla.2007) (holding plaintiff lacked standing despite alleging an intent to return "at least three or four times during the next twelve months.").

herself of the goods, services, features, facilities, benefits, advantages, and accommodations of the Property."); *see also, e.g., Kennedy v. Best Weather Corp,* No. 0:18-cv-60655-UU (S.D. Fla. Aug. 14, 2018), D.E. 1 ("In the near future, Plaintiff intends to revisit Defendant's website and/or online reservations system in order to test it for compliance with 28 C.F.R. Section 36.302(e) and/or to utilize the website to reserve a guest room and otherwise avail herself of the goods, services, features, facilities, benefits, advantages, and accommodations of the Property."); *Kennedy v. CSC Brazilian, L.P.,* No. 9:18-cv-80651-WPD (S.D. Fla. May 30, 2018); *Kennedy v. Georgia Avenue LLC,* No. 9:18-cv-80584-DMM (S.D. Fla. May 30, 2018); *Kennedy v. Biba el Cid, LLC,* No. 9:18-cv-80542-DMM (S.D. Fla. July 3, 2018); *Kennedy v. South Pacific Enterprises LP,* No. 9:18-cv-80583-BB (S.D. Fla. July 5, 2018); *Kennedy v. G6 Hospitality Property, LLC,* No. 9:18-cv-80142-DMM (S.D. Fla. July 31, 2018); *Kennedy v. The Breakers Palm Beach, Inc.,* No. 9:18-cv-80714-DMM (S.D. Fla. August 6, 2018); *Kennedy v. Palm Beach Inn, LLC*, No. 9:18-cv-80548-RLR (S.D. Fla. September 19, 2018); *Kennedy v. Tiki Beach Real Estate, LLC,* No. 0:18-cv-62267-WPD (S.D. Fla. October 22, 2018); *Kennedy v. Jay Mahadev, LLC*, No. 0:18-cv-62038-BB (S.D. Fla. October 25, 2018); *Kennedy v. Shiv Bola, LLC*, No. 0:18-cv-62269-DPG (S.D. Fla. October 11, 2018); *Kennedy v. The Oasis at Fountain Beach Resort, LLC*, No. 0:18-cv-62268-JIC (S.D. Fla. October 31, 2018); *Kennedy v. Toto Hospitality, LLC,* No. 1:18-cv-24584-KMM (S.D. Fla. November 1, 2018); *Kennedy v. Beachfront Hojo, LLC*, No. 0:18-cv-62270-WPD (S.D. Fla. November 6, 2018); *Kennedy v. Jan Mazur*, No. 0:18-cv-62406-KMW (S.D. Fla. November 13, 2018); *Kennedy v. Holiday Hotel & Resort, LLC*, No. 0:18-cv-62258-KMM (S.D. Fla. November 15, 2018); *Kennedy v. Beachfront Hojo, LLC*, No. 0:18-cv-62900-UU (S.D. Fla. November 29, 2018). This indicates that Plaintiff does not actually intend to revisit the abundant number of subject websites, particularly given that she has no record of

the websites she has sued. *See infra* pp. 20-22; *see also Brother v. CPL Investments, Inc*., 317 F.

Supp. 2d 1358, 1369 (S.D. Fla. 2004) (finding plaintiff lacked a credible intent to return to the

facility because "in the last year, he has been a plaintiff in more than 50 other suits in Florida

which were brought pursuant to the ADA."); *Tiger Partner, LLC*, 331 F. Supp. 2d at 1374

(granting summary judgment because plaintiff had not shown a real and immediate threat of

future injury as he was "involved in a multitude of lawsuits against the hotel industry . . . [and]

Mr. Brother <u>has professed an intent to return to all fifty-four of the properties he has sued</u>. This is

simply implausible.") (emphasis added); *Brother v. Rossmore Tampa Ltd. P'ship*, No.

8:03CV1253T-24MAP, 2004 WL 3609350, at *4 (M.D. Fla. Aug. 19, 2004) ("The Court,

however, finds that Plaintiff's professed intent to return to Defendant-hotel lacks credibility.

Plaintiff has been a plaintiff <u>in over seventy suits</u> against places of public accommodations

brought pursuant to the ADA.") (emphasis added); *Access 4 All*, No. 504CV75OCGRJ, 2005

WL 1212663, at *5 ("[I]n order to attempt to satisfy the constitutional standing requirement of

Article III, Mr. Esposito has stated that he intends to return in the future to the approximate one-

hundred hotels that he has sued. While this may be so, the Court . . . [finds] that such a

contention is simply implausible and in any event is insufficient to evidence the required threat

of future injury to establish standing."); *Harris v. Stonecrest Care Auto Ctr.*, LLC, 472 F. Supp.

2d 1208, 1213 (S.D. Cal. 2007) ("While the Court acknowledges Mr. Harris' right to file ADA

lawsuits to remedy denial of access violations, <u>the reality is he has sued so many different</u>

<u>establishments that it is impossible to believe he routinely visits the same establishments . . . .</u>")

(emphasis added); *Molski v. Mandarin Touch Rest*., 385 F. Supp. 2d 1042, 1046 (C.D. Cal. 2005)

("A serial plaintiff's extensive litigation history can undermine his professed intent to return . . .

As a result, Mr. Molski's professed intent to return to the Mandarin Touch is insufficient to

establish standing . . . Molski's expressed intent to return to 400 or more businesses spread across the entire state of California is even more questionable."); *D'lil v. Best Western Encina Lodge & Suites*, 2006 WL 197143, (C.D.Cal.2006) ("When asked if she was involved in 62 prior lawsuits, Plaintiff replied, "I think so." In short, it appears Plaintiff declares that she intends to return to nearly every place she sues . . . While some of these allegations may have initially been accepted in other cases without question, even at the trial stage, as more suits are filed and more—and contradictory—allegations are made, credibility concerns increase.") (internal citations omitted ).

Further, despite this swarm of lawsuits, Plaintiff apparently has no record of the ADA lawsuits she has brought, and she has "no idea" how many lawsuits she has filed against hotels because of their websites because she doesn't "pay attention:"

> Q. How many lawsuits have you filed against hotels or motels because of their online reservation system?
>
> A. I don't know
>
> Q. You have no idea?
>
> A. No. I don't pay attention . . .
>
> Q. Do you go back and revisit these websites after you file a lawsuit?
>
> A. Yes.
>
> Q. How do you know to go back and revisit these websites?
>
> A. I try to remember but –
>
> Q. Other than trying to remember, how else -- do you keep any records of the lawsuits that you've brought and the websites that you filed suit against?
>
> A. No, not anymore . . .

D.E. 45-1 at 28:13-16, 38:7-16. Similarly, Plaintiff also testified that she has no system or routine to revisit these websites to determine if they have become ADA-compliant. Instead,

Plaintiff sometimes revisits these websites "for the hell of it," and she "doesn't have a clue" how

many websites she has gone back and visited in the past month or six months:

> Q. So then how is that you go and -- how is it that you go and revisit the website? What prompts you, if anything, to go back and revisit a website?
>
> A. Sometimes I'm going back to that area or I just want to know for the hell of it. I want to check it out so.
>
> Q. All right, but you don't have a routine or system in place to go back and check these websites . . .
>
> A. No . . .
>
> Q. All right. In the last month, how many websites where you filed suit have you gone back and visited . . .
>
> A. I don't have a clue.
>
> Q. What about in the last six months?
>
> A. I have no idea.

D.E. 45-1 at 39:2-11, 49:7-23. Thus, while being an ADA tester can contribute to a finding

that a plaintiff has a definite intent to return to the non-compliant facility, Plaintiff's serial

litigation history, ignorance as to this litigation history, and *ad hoc* method of ADA testing does

not show that Plaintiff has any kind of concrete intent to return to the Website and therefore does

not demonstrate that she will suffer a real and immediate threat of future injury. *Cf. Harris,* 472

F. Supp. 2d at 1213 ("In addition, Mr. Harris' inability to keep details of other lawsuits straight

raises concerns he may be charging the Shell station with violations he encountered in an entirely

separate establishment.").

### 6.   Post-suit Visits

Lastly, Plaintiff's assertions that she visited the Website twice *after* filing suit, including

most recently in October, 2018 do not indicate that she is likely to suffer an injury in the future.

D.E. 39 at 6. Standing is determined at the time of the filing of the complaint and therefore these

visits "are immaterial for standing purposes since they occurred *after* she commenced this action." *Schling LLC*, No. 6:17-CV-74-ORL-22TBS, 2017 WL 6597119, at *6 (quotation omitted) (emphasis in original); *Solano*, 735 F. App'x at 655 ("Although she visited the restaurant a second time after she filed suit, courts determine standing at the time of filing; thus, the second visit is immaterial.").

### 7. <u>Conclusion as to Threat of Future Injury</u>

Other than the conclusory assertions in her affidavit, Plaintiff has provided neither dates, times, nor any other details that would take her intent to return to the Website out of the ethereal realm of speculation and into the realm of tangible possibility; in sum, she "cannot point to anything in the record that supports a concrete and realistic plan to revisit Defendants' [Website]." *Beachside Commercial Properties, LLC*, 732 F. App'x at 822. Thus, for the aforementioned reasons, the Court finds that the "some day" assertions in Plaintiff's affidavit are insufficient to satisfy Plaintiff's burden of demonstrating that she will suffer a "real and immediate" threat of future injury. *See, e.g., Tampa Bay Americans with Disabilities v. Nancy Markoe Gallery, Inc.,* 2007 WL 2066379, *2 (M.D.Fla.2007) (finding that the plaintiff failed to demonstrate a real and immediate threat of future injury despite alleging a "present intention to return to the [facility] in the immediate future, at least three or four times during the next twelve months and thereafter, and probably more often."); *Access for the Disabled, Inc. v. Rosof*, 2005 WL 3556046, *2 (M.D. Fla. 2005) (holding that plaintiff failed to adequately plead threat of a real future injury despite alleging an intention to return to the site "annually" and in the "near future" to verify compliance with ADA because plaintiff did not allege any regular contact with the facility); *Payne v. Gulfstream Goodwill Indus., Inc.,* No. 15-CV-81120, 2015 WL 6123529, at *4 (S.D. Fla. Oct. 19, 2015) (holding plaintiff failed to plead

threat of future injury because she merely pled that she had "plans to visit the property," which the court described as "nothing more than a vague, conclusory allegation of future harm, devoid of factual enhancement."); *Brother v. Rossmore Tampa Ltd. P'ship*, No. 8:03CV1253T-24MAP, 2004 WL 3609350, at *4 (M.D. Fla. Aug. 19, 2004) (finding plaintiff lacked standing because his affidavit stating he intended to return to the non-compliant hotel was overly vague and illogical); *Rosenkrantz v. Markopoulos*, 254 F. Supp. 2d 1250, 1253 (M.D. Fla. 2003) (holding plaintiff lacked standing because he had no concrete plans other than stating that he intended to travel to the area in the next year or two); *Lamb v. Charlotte Cty.*, 429 F. Supp. 2d 1302, 1310 (M.D. Fla. 2006) (granting summary judgment in favor of defendant and holding plaintiff had not demonstrated a real and immediate threat of future injury because he only "wished" to return to the property once it was compliant).

### d. <u>Uncharted Territory</u>

The Eleventh Circuit has yet to opine on the precise showing necessary to establish a "real and immediate" threat of future injury resulting from a website's non-compliance with the ADA, and the Court is conscious of the fact that the vast majority of courts that have engaged in the "totality of the circumstances" analysis have done so in circumstances involving physical property. *See Gold Sun Hospitality, LLC*, No. 8:18-cv-842-T-33CPT (M.D. Fla. June 18, 2018), D.E. 23 at 33 ("[I]n all candor, there weren't a whole lot of cases here concerning visiting a website without visiting the actual public accommodation."). The Court is also aware that because of the unique nature of websites, some of the considerations that are relevant in discussing the threat of future injury from physical property may take on outsized importance when analyzing websites. Chief among these considerations is that a website is easily and instantly accessible "from the comfort of . . . home and at no cost." *Id.* at 31. By virtue of this

instant access, a plaintiff may have an easier time showing that he or she is likely to suffer a real and immediate threat of future injury by returning to the website, in the same way that a disabled plaintiff who lives next-door to a non-ADA compliant property would have an easier time establishing that he or she would be likely to revisit the property and suffer discrimination. Thus, it might be argued that notwithstanding the aforementioned issues, because Plaintiff can easily and instantly access the Website, she is subject to a real and immediate threat of future harm.

However, absent guidance from the Eleventh Circuit, this Court will not permit the fact that a website is easily and instantly accessible to swallow whole the Article III requirement that at the summary judgment stage, a plaintiff demonstrate by citations to record evidence, a "real and immediate" threat of future harm. To hold otherwise would be to rubber-stamp standing for injunctive relief in every claim against a non-compliant website in which the plaintiff alleges a vague intention to return to the website. This would eviscerate the Constitutional limits placed on the Court's power to only decide cases and controversies. *See Tiger Partner, LLC*, 331 F. Supp. 2d at 1375 (explaining that the current ADA system "cries out for a legislative solution" because the current system "encourages massive litigation," which is "particularly the case in the Middle District of Florida where the same plaintiffs file hundreds of lawsuits against establishments they purportedly visit regularly. This type of shotgun litigation undermines both the spirit and purpose of the ADA."); *cf. Wilson v. Costco Wholesale Corp.*, 426 F. Supp. 2d 1115, 1121 (S.D. Cal. 2006) (holding plaintiff lacked standing because "[w]hile Plaintiff speculates about the possibility of returning to the facility, nothing in the record indicates that Plaintiff is likely to do so.").

As the precedent in this circuit has established with regard to physical property, the showing necessary to establish a real and immediate threat of future injury in the context of a website that

is not compliant with the ADA will vary depending on the "totality of the circumstances," but it requires more than the "someday" plans and vague intentions to return that Plaintiff has provided here.

## V.   **Conclusion**

The Court finds that Plaintiff's motion for summary judgment must be denied; not on the merits, but because the record reflects that she lacks standing to bring her claims. Ordinarily, the denial of a plaintiff's motion for summary judgment would lead to trial to decide the merits[7] and any disputed issues of material fact. However, as standing is jurisdictional, the Court will not

---

[7] The Court notes that even if Plaintiff had standing, she would not be entitled to summary judgment. Both parties stipulate that the *Hotel* is a place of public accommodation. D.E. 47 at 2. Yet, Plaintiff frames its arguments around the *Website*, and has not briefed whether the *Website* constitutes a place of public accommodation under the ADA. This is crucial to the merits of Plaintiff's case because her ADA claim does not apply to places that are not public accommodations. *See* 42 U.S.C. § 12182(a) (prohibiting discrimination on the basis of disability in the full and equal enjoyment of goods and services in any place of public accommodation.) District courts within this Circuit addressing whether websites are places of public accommodation have uniformly held that a website is not a place of public accommodation if it is not connected to a physical place in some way. *See, e.g., Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1320 (S.D. Fla. 2017); *Gomez v. Bang & Olufsen Am., Inc.*, No. 16–23801, 2017 WL 1957182 (S.D. Fla. Feb. 2, 2017) (holding that a website that is wholly unconnected to a physical location is generally not a place of public accommodation under the ADA); *Kidwell v. Florida Comm'n on Human Relations*, No. 16-403, 2017 WL 176897, at *4 (M.D. Fla. Jan. 17, 2017) (holding that a website is not a public accommodation under the ADA). If, however, a plaintiff can establish a nexus between the website and the physical premises of a public accommodation, those courts have held that a website is subject to the ADA. *See, e.g., Gomez v. Bang & Olufsen Am., Inc.*, 2017 WL 1957182, at *3 (explaining that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss). Here, Plaintiff has not alleged that the Website constitutes a "nexus" for the Hotel and the Court cannot and will not make Plaintiff's argument for her. *Cont'l Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp. 2d 1296, 1302 n.6 (S.D. Ala. 2012) ("Movants not having fleshed out this argument or lent it any substance, this Court will not undertake to develop it on their behalf.") (citations omitted); *see also Vision Bank v. Merritt*, 2010 WL 5474161, *4 (S.D.Ala. Dec. 8, 2010) ("If Merritt wishes to pursue such a legal theory, it is incumbent on him to perform the necessary research and develop that argument, rather than stating it in the vaguest of outlines and expecting this Court to fill in the gaps."); *Federal Ins. Co. v. County of Westchester*, 921 F.Supp. 1136, 1139 (S.D.N.Y.1996) ("Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk."). Accordingly, Plaintiff's motion for summary judgment would be denied on the merits. *See Access Now, Inc. v. Sw. Airlines, Co.*, 227 F. Supp. 2d 1312, 1321 (S.D. Fla. 2002) (granting motion to dismiss where plaintiffs failed to allege that Southwest Airlines' website had a nexus to a geographic location). Moreover, Plaintiff's complaint fails to specify under which specific statutory subsection of Title II she is bringing her claim. *See, e.g.*, D.E. 21 ¶ 12 ("Defendant failed to post the required information on its website referenced above. This deprives Plaintiff of her rights bestowed by the CFR and 42 U.S.C. Section 12182 by failure to provide full and equal access to the Defendant's website services."). This is crucial because §12182(b)(1)(A)(i)-(iii) (prohibiting, *inter alia*, denial or unequal participation in participation in goods and services) only apply to "clients or customers" of the public accommodation, and Plaintiff has failed to assert that she is a client or customer of the Hotel. For this additional reason, the Court would deny summary judgment.

proceed to trial as it lacks subject matter jurisdiction and therefore must dismiss the action. *Cone Corp.*, 921 F.2d at 1203 n. 42   ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)."); Fed. R. Civ. P. 12(h)(3) ("[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) ("In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims . . . the court is powerless to continue.") (quotations omitted). Lastly, as standing is determined at the time of filing the complaint, and as Plaintiff has already amended her complaint once, the Court finds that amendment would be futile and will dismiss the action with prejudice. *See Equal Access For All, Inc. v. Hughes Resort, Inc.,* No. 504CV178MCR, 2005 WL 2001740, at *8 (N.D. Fla. Aug. 10, 2005) ("[V]iewing the factual allegations . . . required for establishing standing discussed above, the court finds that amendment is not possible . . . standing is assessed based on the facts as they existed at the time the lawsuit was filed . . . Nothing in the instant complaints or the plaintiffs' subsequent representations suggests that the plaintiffs can allege facts giving rise to the plausible inference that, at the time the complaints were filed . . . and based on concrete, particularized intentions to return to their establishments, [Plaintiff] was likely to suffer future discrimination by the defendants."). Accordingly, it is

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment, D.E. 39, is DENIED. The Action is DISMISSED WITH PREJUDICE. It is further

ORDERED AND ADJUDGED that the Clerk of Court SHALL administratively close this case. All future hearings are CANCELLED and all pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this _7th_ day of December, 2018.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

cc:  counsel of record via cm/ecf

28